IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

AMARILLO DIVISION

| | | |
|---|---|---|
| THE CITY OF ALTUS, OKLAHOMA, | § | |
| | § | |
| PLAINTIFF, | § | |
| vs. | § | CIVIL ACTION CAUSE NUMBER |
| | § | |
| LEONARD KEITH SPEARS and | § | 2:13-CV-232-J |
| SHERRY K. SPEARS, | § | |
| | § | |
| DEFENDANTS. | § | |

## MEMORANDUM OPINION AND ORDER

This is a declaratory judgment action in which Plaintiff City of Altus, Oklahoma, and Defendants Leonard and Sherry Spears seek declarations of the proper legal interpretation of contractual provisions in a groundwater lease and water purchase contract between the parties. Both parties have moved for summary judgment in favor of their differing views of the contract and its amendments. For the following reasons, a final judgment will be entered granting in part and denying in part the parties' requests for a declaratory judgment in their favor.

### THE CONTRACT

Leonard and Sherry Spears are successor lessors to a 1965 lease and groundwater production contract with the City of Altus, Oklahoma. The lease relates to water rights under land known as the Round Timbers Ranch in Wilbarger County, Texas. The contract sets out two independent payment obligations: (1) a minimum annual payment necessary to maintain the lease, and (2) a purchase price or rate per 1,000 gallons of water produced from and transported off the leased premises. The amounts of those payment obligations have varied over time. Currently, the lease requires Altus to make a minimum annual payment of $16,292.50 to the Spears to maintain the city's right to purchase water off the land. There is no dispute regarding the amount of the minimum annual payment required under the lease. There are no disputed fact issues regarding the

unambiguous language of the lease or its amendments. There is no dispute that Texas law governs the contract at issue.

In 2007, the parties agreed to a new rate of 75 cents per 1,000 gallons for water produced from and transported off the leased premises. How to apply the new rate pursuant to the contract's pricing provisions is disputed. No water is currently being produced from the land; the water production facilities are in such serious disrepair that the City estimates it would take millions of dollars to bring them back online. Production of water from the land ceased during 1990.

## THE PARTIES' ARGUMENTS

Altus filed this suit for declaratory judgment, asking the Court to declare that the lease's minimum annual payment of $16,292.50 not only keeps the lease in force but also entitles Altus to receive 2,500 acre-feet of water annually, so that the annual lease payment includes the first 2,500 acre-feet of water produced at the price of two cents per 1,000 gallons. Altus contends it does not have to pay 75 cents per 1,000 gallons until *after* it produces the first 2,500 acre-feet (814,627,500 gallons) of water. Altus' interpretation is beneficial for the City in that should production resume it would pay $16,292.50 for the first 2,500 acre-feet of production, versus $610,970.63 under the Spears' proposed interpretation.

The Spears' counterclaim for declaratory judgment requests the Court to declare that the lease, as amended in 2007, sets the current rate for any and all amounts of groundwater produced from and transported off the property at 75 cents (adjusted annually by the Consumer Price Index (CPI)) per 1,000 gallons. The Spears argue that while the minimum annual payment of $16,292.50 remains, that amount only holds the lease but does not include or "cover" the first 2,500 acre-feet of production at a rate of two cents per 1,000 gallons. They argue that Altus must pay the Spears more than the minimum annual lease payment if and when water is again produced, based upon the contractual rate of 75 cents times each 1,000 gallons of Altus' groundwater production in a calendar year. The Spears argue that Altus seeks to deprive the Spears of the negotiated-for 75 cent rate for all of Altus' annual groundwater production, a position they say the lease does not support.

Altus further contends that the lease is perpetual. That is, the lease is maintained in force so long as Altus continues making the minimum annual payment, and a failure to pay the minimum annual payment is the only event of termination set forth in the lease. The Spears seek a counter declaration that the lease is a tenancy-at-will that may be terminated by either party at any time, with any lease amounts paid or due prorated on an annual basis. The Spears argue that because the lease is of indefinite duration, with termination controlled solely by Altus, pursuant to Texas case law the lease is a tenancy-at-will that may, upon notice, be terminated by either party at any time.

## DISCUSSION AND ANALYSIS

In construing a contract, a court's primary concern is to ascertain the true intentions of the parties as expressed in the writing. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex. 2003); *National Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex. 1995). Absent fraud or mistake, courts will enforce an unambiguous instrument as written. *Cherokee Water Co. v. Forderhause,* 641 S.W.2d 522, 524 (Tex. 1982). There is no allegation of fraud, mistake or ambiguity in this case.

In construing a contract courts must examine and consider the entire contract "and give effect to all provisions such that none are rendered meaningless." *Gonzales v. Denning,* 394 F.3d 388, 392 (5th Cir. 2004). Terms are given their plain, ordinary meaning unless the contract itself shows the parties intended a different, technical meaning. *Id.*

### *Pricing Provision for Groundwater Production*

Altus contends it does not have to pay 75 cents per 1,000 gallons until after it first produces 2,500 acre-feet (or 814,627,500 gallons) of water. *See* Altus' Orig. Compl. at ¶¶ 8-10. This argument is contrary to the plain terms of parties' agreement as set forth in the 2007 lease amendment.

Effective November 9, 2007, the Spears and Altus executed an amendment to the 1965 lease entitled "Modification to the Groundwater Lease Agreement" (the 2007 amendments). The proper

3

...

interpretation of the new water-pricing clause in the 2007 amendments is disputed. That 2007 pricing clause states:

> Lessee covenants and agrees to pay Lessor seventy-five cents ($0.75) for each 1,000 gallons of water produced from and transported off the leased premises by Lessee; provided, however, that so long as this Lease is continued in force by Lessee, the minimum annual payment shall not be less than $16,292.50, which sum shall be payable in monthly installments of $1,357.71, payable on or before fifteen (15) days after the end of each calendar month. For the remainder of calendar year 2007 the minimum payable shall be $4,073.13, payable in three (3) monthly installments of $1,357.71 each, commencing on October 15, 2007.
>
> In making computation for payments due after January 1, 2013, and for each successive five-year period thereafter, the parties shall renegotiate, by January 1 of the first year of the respective five-year period, the rate per 1,000 gallons to be charged to Lessee for production for the next five-year period, which rate shall be based on the fair market value of groundwater in the area covered by this Lease at the time of renegotiation. The rate renegotiation shall occur at five-year intervals and continue at such intervals thereafter for so long as Lessee continues this Lease in force and effect. The parties shall make good faith and reasonable efforts to agree on a rate per 1,000 gallons to be charged for production, but if the parties cannot agree on such a new rate, the minimum percentage increase shall reflect the increase in the Consumer Price Index during the preceding five (5) calendar years.

By these two new amending paragraphs, which completely replaced the pre-existing pricing provisions, the parties removed the previous language stating that Altus agreed to pay the Spears "two cents" for each 1,000 gallons of water "produced from and transported off the leased premises." The parties did not qualify the new rate of 75 cents by stating that it only applied after the first 2,500 acre-feet of water were produced. The new 75 cent rate is not limited on its face to, or reference, a price for water production related to any amount equal to or based upon an estimated annual re-charge in acre-feet on or under the land from which water is to be produced.

The correct construction of the 2007 pricing clause is that production is priced in 1,000 gallon increments to be paid by Altus, monthly, at the rate of 75 cents for *each* 1,000 gallons

produced from and transported off the premises, beginning with the first 1,000 gallons produced and continuing at that rate for each 1,000 gallons of production thereafter./[1] No additional or qualifying pricing language is present in the lease that supports Altus' contention that the 75 cent rate begins only *after* 2,500 acre feet of production has been exceeded. The pricing clause expressly states that Altus must pay 75 cents "for **each** 1,000 gallons of water produced from and transported off the leased premises." The Spears do not receive the benefit of the renegotiated unit price of 75 cent per 1,000 gallons until water is actually produced, which Altus must pay for on a monthly basis./[2] Whether Altus must pay the Spears more than the minimum annual payment depends on the amount of Altus' groundwater production in a calendar year — at 75 cents per 1,000 gallons of water produced.

This contract interpretation is further evidences by the parties' express acknowledgment of what they intended to do in the 2007 Amendment:

> WHEREAS, the Parties desire to amend the Lease to reflect an increase in the price per 1,000 gallons that Lessee is required to pay Lessor for water produced and transported off the leased premises from two cents per 1,000 gallons to seventy five cents ($0.75) per 1,000 gallons without changing the minimum annual payment or the estimated average annual re-charge computation.

See 2007 Amendment, at SP0119. By this 2007 preface, the parties acknowledged that they had bargained for an increase in the rate for groundwater production to 75 cents and, as part of that bargain, left the minimum annual payment the same, to possibly be adjusted upward if appropriate in the future. Thus the balance of the new pricing clause addresses future upward adjustments in the

---

[1] Beginning on January 1, 1987, Altus' schedule of payments changed to monthly payments. The parties agreed:
> Payments for the water used after January 1, 1987, shall be made monthly. Payment shall be made on or before the 15th day of each month for water so produced during the previous calendar month.

See 1965 Lease at ¶ 7. In this clause the parties intended Altus would pay for all production at the agreed upon rate per 1,000 gallons, the month after it is produced.

[2] To date the Spears have never received this benefit, because production off the land ceased during 1990.

5

rate per 1,000 gallons of groundwater production transported off the leased premises by calling for new pricing negotiations every five years.

The 75 cent rate is to be renegotiated every five years, starting on January 1, 2013, and all future rates are to be based on the then-prevailing fair market value of groundwater produced in the area covered by the lease at the time of renegotiation. If good faith negotiations on a new agreed rate ever fail, then the agreed 2007 default pricing provision is that the minimum percentage *increase* in the new rate is based upon the increase in the Consumer Price Index (CPI) during the preceding five years, assuming the CPI had increased. If the CPI had not increased, presumably the rate would remain the then-current rate; that is, there would be no automatic increase in the water production rate charged over the next five-year production period, but no decrease either. The 2007 default contractual clause is silent on potential future decreases in the CPI; agreed decreases in rate, if any, can be addressed during good faith negotiations.

### *The Term of the Groundwater Lease*

The Spears contend that under Texas law a lease must be for a certain period of time or it will be considered a tenancy at will, and that a lease that is terminable at will by the lessee (Altus) is also terminable at will by the lessor (themselves). Altus contends the lease is perpetual. To support their differing contentions, both parties cite cases which are distinguishable on their facts.

The 1965 lease states that it "shall remain in force from date until June 15, 1966, and so long thereafter as lessee shall continue to make minimum annual payments to lessor in the manner and amounts hereinafter stated." *See* 1965 Lease at ¶ 4. This clause has not been replaced or modified by subsequent amendments. Failure to pay the minimum annual payment is an event expressly contemplated in the lease, Altus controls that event, therefore Altus may terminate the lease at its will, and it is a terminable-at-will lease.

Both parties agree that Texas law disfavors perpetual leases. Under Texas law a lease may be perpetual only where its written terms clearly express an intent of the parties that the lease is perpetual, and for only so long as the land is used for the definitely ascertainable purpose set forth within the lease. *See Philpot v. Fields,* 633 S.W.2d 546, 548 (Tex. App.—Texarkana 1982, *no writ*).

The lease here is specific in expressing the rights, obligations, and duties of the parties. Under Texas law termination is tied to a cessation of the use of the land for certain definitely ascertainable purposes – here, groundwater production./[3] The lease does not give Altus any right to use the leased premises for any other use other than water production and transport off the land. However, in this case, the leased land is no longer *used* for the sole ascertainable purpose stated within this lease. No groundwater production has occurred off the land since 1990.

The 2007 Amendment states that the parties intended in 1965 to enter into a perpetual lease, stating that "C.F. and Pauline Mock [the Spears' predecessors in interest] ... entered into a perpetual lease agreement dated May 29, 1965 ...". It is undisputed that the land was actually used for the stated purposed of groundwater production from the 1960s until 1990.

However, the past intent of the parties to enter into a perpetual lease is not clearly stated as the parties' current intent within the 2007 lease document. The clear intent of the parties as stated within the 2007 lease amendment was to *use* the land for the definitely ascertainable purpose of groundwater production and transport off the land at current market-based rates. Altus admittedly has not used the leased land for its intended use for well over twenty years, does not now so use the land, and has not stated any intention to use the land in the future for the intended use of the land as clearly expressed within the lease. Altus' continued non-use of the land is contrary to the parties' intentions for *use* of the land, as expressed within the lease's terms.

A court must give effect to the parties' unambiguous written intent as clearly set forth in the terms of a lease. *See Cherokee Water Co. v. Forderhause,* 641 S.W.2d 522 (Tex. 1982); *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515 (Tex. 1968). Considering the clearly intended use of the land as set forth in the lease, the undisputed facts related to Altus' non-use of the land, Texas law disfavoring perpetual leases and giving effect to lease terms clearly expressing the parties' intent for use of leased lands, the Court concluded that under Texas law this lease is not

---

[3] The second paragraph of the lease enumerates the purpose of the City's right to use the land "...for the sole and only purpose of mining, and operating for water, and laying pipe lines and electric lines, and constructing tanks, power stations, roadways and structures thereon to produce, treat, save, store, take care of and transport said water, including the injection of water into subsurface formations, all in [the leased area] ...".

perpetual but is terminable at will by the lessors (the Spears) or the lessee (Altus). It also terminates when Altus has failed to make the required minimum annual payments to the lessors in the manner and amounts stated in the lease.

## CONCLUSIONS

The correct construction of the 2007 pricing clause is that production is priced in 1,000 gallon increments to be paid by the City of Altus, monthly, at the rate of 75 cents for each 1,000 gallons produced from and transported off the premises, beginning with the first 1,000 gallons produced and continuing at that rate for each 1,000 gallons of production thereafter, with the rate adjusted upwards every five years by agreement or, if there is no such agreement after good faith negotiations, by the CPI if that index has increased over the preceding five years. Whether Altus must pay the Spears more than the minimum annual payment depends on the amount of Altus' groundwater production in a calendar year — at 75 cents per each 1,000 gallons of water produced and transported off the land. The lease is not perpetual. It is terminable at will by either party thereto. Further, it also terminates when Altus fails to make the required minimum annual payments to the lessors in the manner and amounts stated in the lease.

For the reasons stated above, a final declaratory judgment will be entered in accordance with this opinion and order.

It is SO ORDERED.

Signed this the ____14th____ day of January, 2015.

_____
**MARY LOU ROBINSON**
UNITED STATES DISTRICT JUDGE